# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP1099-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |           Plaintiff-Respondent, |
| |     v. |
| | Maltese Lavele Williams, |
| |           Defendant-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 10, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 21, 2015. |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Jeffrey A. Wagner |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J., concurs. (Opinion Filed.) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendant-appellant, there were briefs by *John A. Pray* and the *Frank J. Remington Center*, *University of Wisconsin Law School*, and oral argument by *John A. Pray*.


    For the plaintiff-respondent, the cause was argued by *Daniel J. O'Brien*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP1099-CR
(L.C. No. 2013CF30)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Maltese Lavele Williams,**

      **Defendant-Appellant.**

**FILED**

**JUL 10, 2015**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from a judgment and order of the Circuit Court for Milwaukee County, Jeffrey A. Wagner, Judge. *Affirmed.*

¶1 DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61 (2011-12).[1] The court of appeals certified the case asking this court to clarify precedent related to erroneous jury instructions in criminal trials.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶2    Maltese Lavele Williams (Williams) and two accomplices attempted to rob Michael Parker (Parker) in Parker's home on the evening of January 14, 2013.  During the robbery, Parker and a houseguest, Authur Robinson (Robinson), were shot and killed. At trial, the jury was given an instruction indicating that they could convict Williams of the felony murder of Robinson if the defendants had attempted to rob Robinson and the attempted robbery caused Robinson's death.  However, the State presented insufficient evidence at trial that the defendants had attempted to rob Robinson.  Instead, the State relied primarily on the theory that the men attempted to rob Parker.  The jury convicted Williams of felony murder in Robinson's death even though they found Williams not guilty of the attempted robbery of Robinson.[2]

¶3    The parties do not dispute that a valid theory of felony murder for the death of Robinson would be that Williams, as party to a crime, caused the death of Robinson while engaged in an attempted armed robbery of Parker.  However, Williams argues that the jury was obligated to follow the instructions given to them on felony murder, and that the evidence presented was insufficient for the jury to convict him under the instructions given.  The State counters that any error in the jury instructions only increased the burden on the State, and that it is clear that had the jury been given the proper

---

[2] Milwaukee County Circuit Judge Jeffrey A. Wagner presided at the trial.

instruction, the jury still would have found Williams guilty of felony murder.

¶4 We are presented with two seemingly conflicting precedents that address the question at issue. The first case is State v. Wulff, 207 Wis. 2d 143, 557 N.W.2d 813 (1997), in which we held that a defendant cannot be convicted on a theory of a crime not presented to a jury. The second case is State v. Beamon, 2013 WI 47, 347 Wis. 2d 559, 830 N.W.2d 681, in which we upheld the conviction of a defendant even though the jury was given an instruction that inaccurately added an element——not required by the statute——to the crime of fleeing or evading a police officer.

¶5 In certifying this case for our review, the court of appeals noted that "[e]ach of these three cases, Wulff, Beamon, and now Williams, appears to present a subtle variation of the same issue," and observed that it was "uncertain whether Williams is more like Wulff or more like Beamon." State v. Williams, No. 2014AP1099-CR, unpublished certification (Wis. Ct. App. Nov. 6, 2014). The court of appeals also noted that two other issues on appeal——ineffective assistance of counsel claims related to trial counsel's decision not to strike a juror and not to object to the admission of crime scene photographs—— involved the application of settled law.

¶6 We hold that a jury instruction may be considered erroneous when it describes a theory of criminal culpability that was not presented to the jury or it omits a valid theory of criminal culpability that was presented to the jury.

3

Convictions under erroneous jury instructions are subject to harmless error review. When an erroneous instruction has been given but it is clear beyond a reasonable doubt that the jury would have convicted the defendant had the proper instruction been given, the jury verdict can be affirmed.

¶7    Here, based on the strength of the evidence presented and the statutory elements that the jury found, it is clear beyond a reasonable doubt that the jury still would have convicted Williams of felony murder had the jury instruction accurately reflected the State's theory of the crime. We therefore hold that the defect in the jury instructions was harmless error. Furthermore, we conclude that Williams was not prejudiced by his trial counsel's decision not to strike a juror and not to object to the admission of crime scene photographs. Accordingly, we affirm the circuit court's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶8    In the early morning hours of January 15, 2013, Milwaukee police responded to a double homicide at a house on Milwaukee's south side. The investigators later learned that the killings occurred during a failed drug heist. The first homicide victim, Michael Parker, was found dead in the snow across the street from his home. The second victim, Authur Robinson, was found dead on the floor of Parker's kitchen. Both victims died from bullet wounds.

¶9    Police recovered a cell phone at the scene of the murders and traced the phone to an individual named Dajuan

4

Collins.  Collins, in turn, led the police to Williams, who was arrested around 3:00 p.m. on January 21, 2013.

¶10  Milwaukee Police Detective Kent Corbett interviewed Williams the next day at the Milwaukee Police Department. Williams first denied knowing Parker or Collins, but eventually admitted to knowing both.  Williams also admitted that he had arranged the drug deal and was at the scene when the homicides occurred.  He said that Collins had killed Parker.

¶11  Williams explained that the events leading up to the killings began when Collins called Williams seeking an ounce of marijuana.  Williams knew that Parker sold similar quantities, so Williams arranged a deal.  Some time later, Williams met up with Collins and a third individual, Maurice Dixon.  The three of them then walked to Parker's home.

¶12  When the trio arrived at Parker's home, Williams and Collins went inside, while Dixon remained outside.  Williams noticed Robinson sleeping in the living room.  Parker called Williams into the kitchen, and as Parker and Williams were discussing Parker's marijuana, Collins burst into the room pointing a gun and demanding the marijuana.

¶13  Parker attempted to flee and Collins opened fire. Collins fired one shot in the kitchen and then followed Parker into the living room where Collins fired several additional shots.

¶14  In spite of being shot three times, Parker managed to escape through the front door of his home.  After getting

5

outside, however, Parker ran across the street, collapsed in the snow and died.

¶15 Williams explained to Detective Corbett that he remained in the kitchen until after the initial fusillade. Williams then returned to the living room and saw Collins and Robinson fighting for control of the gun. Williams said that he exited the house through the front door while Collins and Robinson continued to fight.

¶16 In the initial information filed February 5, 2013, after a preliminary examination, Williams was charged with two counts of felony murder, with an attempt to commit armed robbery as party to a crime as the underlying offense.[3] An amended information, filed March 13, 2013, amended the charges to two counts of first-degree intentional homicide as party to a crime, and two counts of attempted robbery as party to a crime.[4] Following some preliminary motions, jury selection for Williams' trial began April 22, 2013.[5]

¶17 During jury selection, prospective jurors were informed that they might "have to look at photographs from the scene that have blood on them, that have people deceased, people

---

[3] Contrary to Wis. Stat. §§ 940.03, 943.32(2), 939.32, and 939.05.

[4] Contrary to Wis. Stat. §§ 940.01(1)(a), 943.32(1)(a) and (2), 939.50(3)(a) and (c), 939.05, and 939.32.

[5] Throughout the pretrial process, Williams and Dixon appeared together as co-defendants. However, Dixon was eventually tried separately.

with gunshot wounds, the victims in this case. You may have to look at other photographs." When asked whether viewing this type of evidence would cause problems for anyone, several jurors expressed reservations about their capacity to examine such evidence. Juror No. 21 explained that her children were the source of her reservations about dealing with that type of evidence. In response to a follow-up question, she reiterated her doubts, stating, "I don't know if I can look at the pictures." Juror No. 6 expressed similar reservations, stating, "As far as the pictures, I can't do that." Juror No. 12 said: "It would be totally gross, grossed out in that situation." Jurors Nos. 8 and 9 said they shared these concerns.

¶18 A short time later, the prospective jurors were again asked whether any of them "would not be able to listen to all the facts, to hear the testimony and weigh the evidence and make a decision in this case? Anyone feel they would not be able to do that?" Despite their reservations about seeing the photographs, none of the jurors raised their hands.

¶19 Still, Williams' attorney returned to the photograph issue. Juror No. 6 said the photos would make her uncomfortable and would probably be something she'd think about all day. Juror No. 6 denied that the photos would anger her, but agreed that she would find them difficult to view. Juror No. 12 said he felt the same as Juror No. 6.

¶20 When asked if the photographs might affect deliberations, Juror No. 12 answered: "Really hard to say. I don't know if I would have a bias or not." This prompted the

7

court to interject with the comment that "everybody would agree they're not pleasant pictures to look at . . . . The question is whether or not it would impair your ability to come to [a] fair and just result in the matter after listening to the testimony." Juror No. 12 responded that he thought he would be a little biased. Williams' attorney immediately sought clarification of Juror No. 12's comment. After a brief exchange, Juror No. 12 agreed that what he was trying to convey was that looking at the pictures would make him feel sympathy for the victims.

¶21 Although potential Jurors 6, 8, 9, and 21, who expressed concerns about the photographs, were not selected for the trial, Juror No. 12 was seated, and defense counsel never moved to strike the juror for cause or by a peremptory strike.

¶22 Williams' trial lasted a total of four days, during which the jury heard testimony from two police officers, a lieutenant, five detectives, forensic investigators, a DNA analyst, Parker's neighbor, and the medical examiner, Dr. Brian Linert, who conducted autopsies on the victims. Dr. Linert testified that Parker had been struck by three bullets. Dr. Linert also testified that Robinson died of a penetrating gunshot wound to the chest. The State entered several exhibits into evidence during Dr. Linert's testimony, including a number of autopsy photographs depicting Parker's wounds, which the State used to clarify the nature, extent and location of Parker's wounds. Similar exhibits were entered relating to Robinson, including the autopsy report, a photograph of the

bullet recovered from Robinson's chest, another showing the entrance wound of the fatal shot, and several depicting blunt force injuries possibly consistent with an altercation.

¶23 On the last day of trial, prior to closing arguments, the parties and the court discussed jury instructions. Although Williams was charged with first-degree intentional homicide, the jury instructions also contemplated a number of lesser included offenses, including first-degree reckless homicide and felony murder. Williams' counsel observed, as proposed instructions were being discussed, that "the way this case has been charged and now in combination with the lesser included offenses, . . . has created a legal Rubik's Cube that I'm not sure [Judge Learned Hand] could untangle."

¶24 Prior to closing arguments, the court reviewed the instructions with the jury. The court explained that if the jury did not find Williams guilty of first-degree intentional or reckless homicide, they would need to decide whether Williams was guilty of felony murder.

¶25 The court instructed the jury that "Felony murder requires the state to prove the defendant caused the death of the victim while committing the crime of attempted armed robbery, party to a crime."

¶26 Later the court again said that felony murder is committed by "one who causes the death of another human being while attempting to commit the crime of armed robbery, party to a crime."

9

¶27 The jury was told that to find Williams guilty of felony murder, the State must prove the following beyond a reasonable doubt "that the defendant attempted to commit the crime of armed robbery as a party to a crime, that the death of Michael Parker in Count 1 and Authur Robinson in Count 2 was caused by the attempt to commit armed robbery, party to a crime."

¶28 Then the court added: "The first element of felony murder requires that the defendant attempted to commit the crime of armed robbery, party to a crime."

> The crime of armed robbery is committed by one who with intent to steal and by the use of or threaten to use a dangerous weapon, takes property from the presence of the owner by using force against the person of the owner with intent to overcome physical resistance or physical power to resist the taking or carrying away of that property.
>
> The elements of the crime that the state must prove are:
>
> That Michael Parker, Count 1, and Authur Robinson, Count 2, was the owner of the property.
>
> Owner means a person who has possession of the property. The defendant or a person with whom the defendant was acting as party to a crime, took property from the person of Michael Parker, Count 1, and Authur Robinson, Count 2, the defendant or person with whom the defendant was acting as a party to a crime took the property with intent to steal.

(Emphasis added.)

¶29 Both sides then gave their closing arguments. During the State's closing argument, the prosecutor discussed the felony murder charge:

10

That the defendant is involved in an attempted armed robbery.  And that in the course of that attempted armed robbery, a death is caused.  And that's felony murder.

So as to Mr. Parker, it's clearly felony murder. It's his home.  He's [nicknamed] Old School.  The defendant knows him.  He's going to rob him.

As to the attempted armed robbery to Mr. Robinson, he is a member of that household with Mr. Parker, as the law indicates.  He is in control of that property, the marijuana as well.  And he attempts to prevent the taking of that marijuana from the premises.  So he is a victim of the attempted armed robbery as well.

But more importantly, whether he's the victim or Parker's the victim, he is killed in the course of the armed robbery.  So he is a victim of the felony murder as well.

(Emphasis added.)

¶30 During Williams' closing argument, defense counsel emphasized the lack of evidence as to an attempted armed robbery of Robinson, and the effect that had on the homicide analysis:

Now, the analysis for Mr. Robinson is nearly identical except for the fact there's an added lack of evidence when it comes to Robinson.

There was no evidence that he was the owner of any of the property in that house.  There was no evidence that he was an employee of Parker; in other words, like the store clerk.

There was no evidence that any demand was made of Mr. Robinson for anything.  And there was no evidence that any force was used or attempted to be used to get him to give up his property.

So in addition to there being no evidence that Williams knew a robbery was going to take place, there isn't even evidence that an attempted armed robbery occurred as to Robinson.

11

So when you get to that, the answer is no and your work is done. <u>You find Mr. Williams not guilty of attempted armed robbery of Robinson and not guilty of any level of the homicides we've discussed.</u>

(Emphasis added.)

¶31 During the State's rebuttal, the prosecutor again returned to felony murder:

The last thing [defense counsel] said to you was that you have to find that, in this case, the defendant attempted, as a party to a crime, to rob Authur Robinson in order to find him guilty of the death of Authur Robinson under a felony murder. That is not true. That is simply a blatant misstatement of the law.

Felony murder is a special type of murder under the law. And it's typically used in just this type of situation.

Someone goes into a bank, for instance, a store. In this case, a drug house. The intent is to rob the bank, or the store, or the drug house. And the state has to show that there was a robbery or an attempted armed robbery in this case taking place.

But doesn't have to show that Authur Robinson was a victim. Because if in the course of this armed robbery anyone is killed, whether it be the bank clerk, the bank's security guard, an accomplice, a kid walking down the street, if anybody, whether it's Authur Robinson, or anyone else was killed while an armed robbery of [Michael] Parker is taking place, that is felony murder.

¶32 Following deliberations, the jury found Williams guilty of two counts of felony murder. The jury also returned verdicts for the two counts of attempted armed robbery, despite having been instructed not to return those verdicts if they found Williams guilty of felony murder. The jury found Williams

guilty of the attempted armed robbery of Parker, and not guilty of the attempted armed robbery of Robinson.

¶33 Williams appealed, arguing that there was insufficient evidence for a finding of guilt as to the felony murder of Robinson and that his trial counsel was ineffective. The court of appeals certified the case for our review, and we granted review on December 18, 2014.

## II. STANDARD OF REVIEW

¶34 We first address whether there was sufficient evidence to convict Williams of the felony murder of Robinson. Generally, we give significant deference to jury verdicts in criminal cases. However, "[w]here jury instructions do not accurately state the controlling law, we will examine the erroneous instructions under the standard for harmless error, which presents a question of law for our independent review." Beamon, 347 Wis. 2d 559, ¶19 (citing State v. Harvey, 2002 WI 93, ¶18, 254 Wis. 2d 442, 647 N.W.2d 189). In determining whether an error was harmless, we will not overturn the jury verdict "unless the evidence, viewed most favorably to sustaining the conviction, 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" Id., ¶21 (quoting State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)).

¶35 We also address whether Williams received ineffective assistance from his trial counsel. Claims of ineffective assistance of counsel are mixed questions of fact and law.

13

State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We uphold the circuit court's findings of fact—including findings about trial counsel's conduct and strategy—unless those findings are clearly erroneous. Id. Whether trial counsel's performance unconstitutionally deprived the defendant of the right to counsel is a question of law we review de novo. Id.

### III. DISCUSSION

¶36 Our discussion proceeds in two main parts. First, we address the jury instructions and the question of whether the evidence presented was sufficient to sustain a conviction for the felony murder of Authur Robinson. Second, we address Williams' claims that his trial counsel's performance unconstitutionally deprived him of the right to counsel.

### A. Sufficiency of Evidence

¶37 We begin by considering whether the evidence presented to the jury was sufficient to sustain conviction for the second count of felony murder. This involves an examination of the jury instructions and their relationship to the crime charged. We start with Wulff and Beamon, the controlling cases.

### i. Wulff and Beamon

¶38 This court decided Wulff in 1997. The defendant, Brian C. Wulff, was charged with attempted second-degree sexual assault following an incident that occurred in La Crosse in the early morning hours of September 17, 1993. Wulff and the victim, C.D., had encountered each other at a bar that evening.

14

After C.D. became separated from her friends, Wulff agreed to walk her home. Wulff, 207 Wis. 2d at 145-46.

¶39 According to C.D., she agreed to let Wulff stay at her apartment for the night if Wulff slept on the couch. C.D. testified that she fell asleep in her bedroom fully clothed. However, at some point in the night, she awoke completely naked with Wulff on top of her attempting to force his erect penis into her mouth. C.D. screamed, and Wulff collected his clothing and left. C.D. discovered that her tampon had been removed but she had no memory of how. Id. at 146.

¶40 C.D. was examined at the hospital. Cervical, oral, and anal swabs revealed that no semen was present, and no semen was found on the tampon that had been removed. Combings taken from C.D. did not include any of Wulff's hair, and combings taken from Wulff did not include any of C.D.'s hair. Id. at 146-47.

¶41 Wulff was charged with attempted second-degree sexual assault in an information that used the precise language of the statute. The information stated that Wulff had attempted "sexual contact or sexual intercourse with a person who the defendant knows is unconscious." Id. at 148. The relevant statute defined "sexual intercourse" as including "[vulvar penetration] as well as . . . fellatio, or . . . any other intrusion, however slight, of any part of a person's body . . . into the genital or anal opening either by the defendant or upon the defendant's instruction." Id. (quoting Wis. Stat. § 940.225(5)(c) (1993-94)). In its closing argument,

15

the State presented theories of attempted sexual contact, attempted sexual intercourse by fellatio, and attempted sexual intercourse by vulvar penetration. However, when the jury was instructed on the charge, the court's instruction omitted fellatio as a possible avenue for finding criminal liability.[6] Despite this omission, the jury found Wulff guilty. Id. at 148-49.

¶42 Wulff appealed, contending that there was no evidence that he had attempted sexual intercourse with C.D. as defined in the jury instructions. This court observed that in Chiarella v. United States, 445 U.S. 222, 236 (1980), the Supreme Court

---

[6] Specifically, the jury instruction given was as follows:

Take the law as it is given in the jury's instructions and apply the law to the facts in the case which are properly proven by the evidence. Consider only the evidence received during this trial and the law as given to you by these instructions and from these alone, guided by your soundest judgment, reach your verdict.

The crime of second degree sexual assault is committed by:

A person who has sexual intercourse with a person the defendant knows is unconscious.

The first element requires that the defendant had sexual intercourse with [C.D.]

"Sexual intercourse" means any intrusion, however slight, by any part of a person's body or of any object, into the genital or anal opening of another. Emission of semen is not required.

State v. Wulff, 207 Wis. 2d 143, 148, 557 N.W.2d 813 (1997).

16

stated "we cannot affirm a criminal conviction on the basis of a theory not presented to the jury." Thus, although the State had provided sufficient evidence to sustain a jury verdict on the theory of attempted fellatio, this court reversed the conviction because the theory of attempted fellatio had not been given as a part of the jury instructions. Wulff, 207 Wis. 2d at 154.

¶43 In 2013 this court revisited the issue of faulty jury instructions in Beamon. In the early morning hours of November 19, 2007, Racine police officers were involved in the pursuit of a vehicle driven by Courtney C. Beamon. Id., ¶¶5-6, 11. While being pursued by a police car with its emergency lights and siren activated, Beamon's vehicle reached speeds of 45-50 miles per hour on city streets without the headlights activated. Id., ¶7. Shortly after driving through an intersection controlled by a four-way stop sign without stopping or slowing down, Beamon rolled out of the vehicle with the vehicle still in motion. Id., ¶¶8-9. The vehicle ran over Beamon's legs and collided with a parked car; but Beamon fled on foot before being apprehended after a lengthy chase. Id., ¶¶9-10.

¶44 Beamon was charged with multiple counts, including "Vehicle Operator Flee/Elude Officer, in violation of Wis. Stat. § 346.04(3)" (2007-08). Id., ¶11. The information stated in relation to the charge:

> On or about 11-19-2007 . . . [defendant Beamon did] unlawfully and feloniously, as the operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such

17

signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, or did increase the speed of the vehicle or extinguish the lights of the vehicle in an attempt to elude or flee . . . .

Id. (alterations in original). This information closely tracked the language of the statute. See Wis. Stat. § 346.04(3) (2007-08).

¶45 However, the jury instructions did not follow the information or the statute. Instead, the jury instructions stated that a person violates the statute "by willful disregard of [a police emergency] signal so as to interfere with or endanger the traffic officer by increasing the speed of the vehicle to flee." Id., ¶15 (emphasis added).

¶46 Missing from the jury instruction was the key word "or" before the clause "by increasing the speed of the vehicle."[7] See Wis. Stat. § 346.04(3) (2007-08). As a result, the jury instruction appeared to require that the defendant be found to have interfered with or endangered the officer by increasing the speed of the vehicle. The State never presented evidence to the jury that Beamon accelerated his vehicle. Nevertheless, the jury convicted him of the charge.

¶47 This court affirmed the conviction. Beamon, 347 Wis. 2d 559, ¶4. First, we noted that it is inappropriate to

---

[7] A person could also violate the law by extinguishing the lights on the vehicle in an attempt to flee; however, that seems not to have been an issue in the case because Beamon apparently never turned the vehicle's lights on. See State v. Beamon, 2013 WI 47, ¶6, 347 Wis. 2d 559, 830 N.W.2d 681.

18

measure the sufficiency of evidence against a jury instruction that provides an erroneous statement of the law, as "doing so would, in effect, allow the parties and the circuit court in that case to define an ad hoc, common law crime."  Id., ¶23. Such a possibility would violate the principle of Wisconsin law that crimes are defined only by the legislature.  Id. (citing Wis. Stat. §§ 939.10, 939.12).

¶48 Second, we acknowledged that faulty jury instructions are subject to harmless error review.  Id., ¶24 (citing Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008); Neder v. United States, 527 U.S. 1, 11 (1999)).  Harmless error review applies both to jury instructions that have omissions and to jury instructions that place an additional burden on the State.  Id., ¶¶24-25. "Therefore, where a jury instruction erroneously states the applicable statute, we must determine whether, under the totality of the circumstances, the erroneous instruction constituted harmless error."  Id., ¶27 (citing Harvey, 254 Wis. 2d 442, ¶46).

¶49 Applying these principles, the court determined that the jury instruction given on fleeing or evading an officer was erroneous in that it "combined two alternative methods of proving the second requirement of the offense," but that the error was harmless.  Id., ¶¶35, 37.  We concluded that the error was harmless because it was "clear beyond a reasonable doubt that the jury would have convicted Beamon" had the jury instruction been correct.  Id., ¶37.

19

¶50 The court also took care to distinguish Wulff. We identified two significant ways in which Beamon's case was different. We noted that in Wulff, the jury was given an accurate instruction that merely omitted a possible avenue for finding the defendant guilty——and all of the evidence presented related to that omitted avenue. Id., ¶44. We also explained that Wulff predated the court's adoption of the harmless error test in Harvey, and thus did not consider harmless error. Id., ¶46.

ii. Clarification of the Rule

¶51 With this background in mind, we turn to the rule to be gleaned from our prior case law on the subject of sufficiency of evidence and erroneous jury instructions. First, we reiterate that errant jury instructions are subject to harmless error analysis. See Hedgpeth, 555 U.S. at 61; Neder, 527 U.S. at 11; Beamon, 347 Wis. 2d 559, ¶¶24-25; Harvey, 254 Wis. 2d 442, ¶47. See also Wis. Stat. § 805.18. This includes errors that omit an element, cf. State v. Smith, 2012 WI 91, ¶¶60-63, 342 Wis. 2d 710, 817 N.W.2d 410, as well as errors that create requirements beyond the statute. Beamon, 347 Wis. 2d 559, ¶25. See also State v. Zelenka, 130 Wis. 2d 34, 48-49, 387 N.W.2d 55 (1986); State v. Courtney, 74 Wis. 2d 705, 715-16, 247 N.W.2d 714 (1976).

¶52 In addition to having precedential support, this holding represents sound policy. As this court noted in Wulff, a criminal defendant whose conviction is overturned due to insufficient evidence cannot be retried for that crime. Wulff,

20

207 Wis. 2d at 153. This all-or-nothing proposition would yield extraordinary results if appellate courts could not review even simple scriveners' errors in jury instructions for harmlessness. We do not think that the United States and Wisconsin Constitutions require that criminals go free simply because of typos. A more reasonable approach is available.

¶53 The application of harmless error analysis to jury instructions in sufficiency-of-evidence cases asks two basic questions. First, was the jury instruction erroneous? Second, is it clear beyond a reasonable doubt that the jury still would have convicted the defendant had the correct instruction been provided?

¶54 In Beamon, we identified one way in which a jury instruction can be erroneous: "a jury instruction that does not accurately state the statutory requirements for the crime charged constitutes an erroneous statement of the law." Beamon, 347 Wis. 2d 559, ¶24. However, it would oversimplify the law to hold that a jury instruction for a crime is erroneous only if the instruction omits an element or includes an extra element.

¶55 The statutory elements of some crimes may be highly context-specific. See id., ¶55 (Bradley, J., dissenting) ("[C]ourts throughout this state regularly give jury instructions that contain factual theories of prosecution."). If the State pursues charges on one theory for a crime, it cannot be said that a jury instruction is erroneous if it omits theories of the crime that were not presented to the jury. This is particularly true with crimes such as felony murder, for

21

which there are a number of possible underlying crimes.[8]   For example, a jury instruction in a felony murder case involving an armed robbery does not need to inform the jury that felony murder can occur during the course of a sexual assault.

¶56 On the other hand, we think it is apparent that jury instructions can be considered erroneous if they instruct the jury on a theory of the crime that was not presented to the jury.

¶57 In much the same way, jury instructions may be erroneous if they fail to instruct the jury on the theory of the crime that was presented to the jury during trial. See Manning v. Kentucky, 23 S.W.3d 610, 614 (Ky. 2000) ("A trial court is required to instruct on every theory of the case reasonably deducible from the evidence.").  The jury instructions in Wulff are an example of this type of error.  In a sense, these jury instructions are erroneous because they do not "accurately state the statutory requirements for the crime charged" as applicable to the facts presented.  Beamon, 347 Wis. 2d 559, ¶24.  This concept is a mere variant of the established principles discussed above.

---

[8] "Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.19, 940.195, 940.20, 940.201, 940.203, 940.225 (1) or (2) (a), 940.30, 940.31, 943.02, 943.10 (2), 943.23 (1g), or 943.32 (2)" is guilty of felony murder.  Wis. Stat. § 940.03.  This list of crimes includes battery (§ 940.19), sexual assault (§ 940.225), arson (§ 943.02), and robbery (§ 943.32).

¶58 In concluding that erroneous jury instructions are subject to harmless error analysis, we do not mean to discount the vital importance of correct instructions to the administration of justice.  The State has the burden of developing and presenting a theory of the crime to the jury. State v. Velez, 224 Wis. 2d 1, 15-16, 589 N.W.2d 9 (1999).  The State cannot second-guess its theory or theories after trial, Chiarella, 445 U.S. at 236, and jury instructions must be expected to control jurors' deliberations.

¶59 In any event, not every erroneous jury instruction is harmless, so we turn now to how some erroneous instructions may be considered harmless.  To affirm a conviction based on an erroneous instruction, a court must be convinced beyond a reasonable doubt that the jury still would have convicted the defendant of the charge had the correct jury instruction been provided.  See Beamon, 347 Wis. 2d 559, ¶4.

¶60 Simplifying Wulff and Beamon provides illustrations of how this concept works in practice.  In Wulff, the defendant was charged with a crime that had as its elements A or B or C.[9]  The

---

[9] Under the relevant statute:

> "Sexual intercourse" includes the meaning assigned under sec. 939.22(36) ["A"] as well as cunnilingus, fellatio, or anal intercourse between persons ["B"] or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction ["C"].

Wis. Stat. § 940.225(5)(c) (1993-94).

23

State presented evidence that Wulff had done B.    The jury was instructed that they could convict Wulff if he had done C, and the jury convicted him.    The conviction was reversed because the jury's verdict that Wulff had done C was not sufficient to demonstrate, beyond a reasonable doubt, that the jury would have concluded that Wulff had done B.

¶61    In Beamon, the defendant also was charged with a crime that had as its elements A or B or C.[10]    The jury was presented only with evidence that Beamon had done A.    However, unlike in Wulff, the jury in Beamon was instructed that they could convict Beamon if he had done both A and B.    The jury convicted Beamon, and the conviction was affirmed because the jury's verdict that Beamon had done both A and B was sufficient for this court to be certain that the jury would have concluded that Beamon had done A.

¶62    Thus, when an erroneous jury instruction raises the State's burden by adding an element not necessary for

---

[10] Under the relevant statute:

No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians ["A"], nor shall the operator increase the speed of the operator's vehicle ["B"] or extinguish the lights of the vehicle ["C"] in an attempt to elude or flee.

Wis. Stat. § 346.04(3) (2007-08).

24

conviction, and the jury convicts, the jury verdict will often sufficiently show that the jury would have convicted if instructed on the proper elements. However, if an erroneous jury instruction omits an element or instructs on a different theory, it will often be difficult to surmise what the jury would have done if confronted with a proper instruction, even if the jury convicted under the erroneous instruction. In other words, in the latter situation it will be more difficult to demonstrate that the error in the jury instruction was harmless.

¶63 In sum, what constitutes an "erroneous" jury instruction goes beyond simple misstatements of statutory elements. Even instructions that provide a correct statement of the statutory elements of one way to commit a crime may be erroneous in the context of a given case, as, for example, under facts similar to those in Wulff.[11] These erroneous instructions are subject to harmless error review, and a conviction based on an erroneous instruction can be upheld if the court is convinced, beyond a reasonable doubt, that the jury would have convicted the defendant if a proper instruction——an instruction

---

[11] Wulff was not analyzed under the harmless error framework because it predated this court's adoption of the harmless error analysis in State v. Harvey, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189. If this court were to decide Wulff today, it would do so under Harvey's harmless error framework.

that is consistent with both the relevant statute and the factual theory presented——had been provided to the jury.[12]

### iii. Application

¶64 Having clarified the legal standard for sufficiency-of-evidence claims in cases involving erroneous jury instructions, we now examine the case at hand.

¶65 The evidence relevant to this appeal that the State presented at trial focused on establishing three facts: (1) Williams participated in an attempted armed robbery of Parker, (2) the attempted armed robbery caused the death of Parker, and (3) the attempted armed robbery caused the death of Robinson. Williams does not contend that the evidence presented at trial is insufficient to sustain a finding of these three facts. Williams also does not dispute that these three facts are sufficient for a finding of guilt for the felony murder of both Parker and Robinson.[13]    Instead, Williams argues that he is entitled to acquittal on the felony murder charge related to Robinson's death because the jury instruction stated that the predicate offense for that charge was the attempted robbery of

---

[12] To be clear, this is not a new harmless error test. Instead, we merely describe how the harmless error test adopted in Harvey applies in the context of erroneous jury instructions.

[13] See State v. Rivera, 184 Wis. 2d 485, 487-90, 516 N.W.2d 391 (1994).

Robinson himself and the State did not present sufficient evidence of such an attempt.[14]

¶66 Williams contends that this case is similar to Wulff because the jury instruction described one possible way, consistent with the statute, that the crime of felony murder could be committed. The jury instruction in question, which defined armed robbery as the predicate offense for felony murder, is worth quoting at length:

> That Michael Parker, Count 1, and Authur Robinson, Count 2, was [sic] the owner of the property.
>
> The defendant or a person with whom the defendant was acting as party to a crime, took property from the person of Michael Parker, Count 1, and Authur Robinson, Count 2, the defendant or person with whom the defendant was acting as a party to a crime took the property with intent to steal.
>
> . . . .
>
> Forcibly means that the person or persons with whom the defendant was acting as a party to a crime used force against Michael Parker, Count 1, and Authur Robinson, Count 2, with the intent to overcome or prevent the physical resistance or physical power of resistance to taking and carrying away the property.

---

[14] One of the many charges submitted to the jury was for the attempted robbery of Robinson. Despite being instructed not to complete the verdict form for this charge if they found Williams guilty of felony murder, the jury did complete the form——and found Williams not guilty of the attempted robbery of Robinson. In light of this, the State does not argue that there was sufficient evidence to sustain a jury verdict of felony murder for the death of Robinson if the predicate offense was the attempted robbery of Robinson.

¶67 The jury instruction suggests that finding Williams guilty of Count 2 (i.e., felony murder of Robinson) required theft of Robinson's property.  However, the parties agree that the felony murder statute does not require such proof, and the State clearly did not limit itself to that theory at trial.  In his closing argument, the prosecutor emphasized exactly the opposite:

> The last thing [defense counsel] said to you was that you have to find that . . . the defendant attempted, as a party to a crime, to rob Authur Robinson in order to find him guilty of the death of Authur Robinson under a [sic] felony murder.  That is not true.  That is simply a blatant misstatement of the law.
>
> . . . .
>
> [The State] doesn't have to show that Authur Robinson was a victim [of attempted robbery].  Because if in the course of this armed robbery anyone is killed, whether it be the bank clerk, the security guard, an accomplice, a kid walking down the street, if anybody, whether it's Authur Robinson, or anyone else was killed while an armed robbery of [Michael] Parker is taking place, that is felony murder.

¶68 The prosecutor's contradiction of the jury instruction describes a different legal theory under which the jury could

28

convict Williams of felony murder.[15]   Given that it is the role of the prosecutor to decide what charges to bring, see State v. Karpinski, 92 Wis. 2d 599, 285 N.W.2d 729 (1979), we conclude that the jury instruction——which did not accurately reflect the State's predominant theory of the case (as evidenced by the State's closing argument)——was erroneous.

¶69 Williams' argument that this case is more like Wulff than Beamon largely misses the point, as Wulff and Beamon are not that dissimilar.   Both cases involved erroneous jury instructions.   The approach in each case was different because, as we pointed out in Beamon, Wulff predated Wisconsin's modern formulation of the harmless error test.   Beamon, 347 Wis. 2d 559, ¶46.   The real difference between Wulff and Beamon——under modern harmless error analysis——is the way in which the nature of each erroneous jury instruction affected the court's ability to conclude whether the jury still would have convicted if given a proper instruction.

---

[15] The State contends that Williams' failure to object to the prosecutor's statement during closing arguments means that the argument is now forfeited, and Williams can pursue only an ineffective assistance of counsel claim for his trial counsel's failure to object at that time.   However, Williams is not challenging the prosecutor's statement in this appeal; Williams is challenging the sufficiency of the evidence to sustain the jury's verdict.   The State provides no authority to support its argument that a defendant's failure to object to a portion of a closing argument somehow changes the relationship between jury instructions and sufficiency of evidence.   Accordingly, we proceed with our analysis using the framework described above rather than an ineffective assistance of counsel framework.

¶70  This brings us to the question of whether it is clear beyond a reasonable doubt that the jury still would have convicted Williams of felony murder for the death of Robinson had the proper jury instruction been given.

¶71  The erroneous jury instruction essentially required four elements for two counts of felony murder: (1) the attempted robbery of Parker, (2) the death of Parker, (3) the attempted robbery of Robinson, and (4) the death of Robinson.  The appropriate jury instruction, which would comport with the prosecutor's theory, would have required only 1, 2, and 4 to convict on both counts.

¶72  We are convinced that the jury's guilty verdict on all four elements provides certainty beyond a reasonable doubt that the jury would have returned a guilty verdict if the instruction had required three of those four elements.  The strength of the State's evidence supports this conclusion.  Accordingly, we hold that the erroneous jury instruction in this case was harmless error, and that there was sufficient evidence to convict Williams of felony murder in connection with Robinson's death.

B. Ineffective Assistance of Counsel

¶73  Having resolved the issue presented for certification, this court has two procedural alternatives for resolving the remaining issue of whether Williams received ineffective assistance of counsel: We can remand the case to the court of appeals or decide the issue here and now.  In the interests of providing the defendant a timely resolution of his case and

preserving judicial resources, we have chosen to decide the remaining issue now.

¶74 Wisconsin has adopted the United States Supreme Court's two-pronged Strickland test to analyze claims of ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984); State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). To prevail under Strickland, a defendant must prove that counsel's representation was both deficient and prejudicial. State v. Erickson, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). Deficient performance means that defendant's counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Prejudice means that, but for counsel's unprofessional errors, there is a reasonable probability that the trial's outcome would have been different. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Courts may apply the deficient performance and prejudice tests in either order, and may forgo the deficient performance analysis altogether if the defendant has not shown prejudice. Johnson, 153 Wis. 2d at 128.

¶75 Williams presents two arguments in support of his contention that he was afforded ineffective assistance of trial counsel. We do not review the arguments in isolation, but instead make our determination based on whether the cumulative effect is sufficient to undermine the outcome of the trial. Thiel, 264 Wis. 2d 571, ¶63. Williams first argues that his

31

counsel was ineffective because counsel did not move to strike a juror who—during voir dire—expressed an aversion to viewing crime scene photographs. Williams' second argument is that his attorney's assistance was ineffective because the attorney did not object when the State offered photographs depicting the crime scene and the victims' bodies.

¶76 We disagree with both of Williams' arguments and hold that Williams was not prejudiced by his counsel's trial performance. Because Williams was not prejudiced, there is no need to determine whether his attorney's performance was deficient. See Johnson, 153 Wis. 2d at 128. We address each argument in turn.

### i. Voir Dire

¶77 Williams argues that his right to a fair trial was compromised because his attorney did not move to strike a juror who expressed an aversion to viewing photographs depicting the crime scene and the bodies of the victims. We reject this argument and hold that Williams was not prejudiced by his counsel's decision not to strike the juror.

¶78 The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury. See U.S. Const. amend. VI; Wis. Const. art. I, § 7; State v. Oswald, 2000 WI App 2, ¶16, 232 Wis. 2d 62, 606 N.W.2d 207. A juror who "has expressed or formed any opinion, or is aware of any bias or prejudice in the case" should be removed from the panel. Oswald, 232 Wis. 2d 62, ¶16. See also Wis. Stat. § 805.08(1).

32

¶79 Here we must ask whether the prospective juror demonstrated subjective bias.  "[S]ubjective bias refers to the bias that is revealed by the prospective juror on voir dire: it refers to the prospective juror's state of mind."  State v. Faucher, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999).  "A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have."  Oswald, 232 Wis. 2d 62, ¶19. The circuit court is in the best position to determine whether subjective bias exists, so "we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous."  State v. Lindell, 2001 WI 108, ¶36, 245 Wis. 2d 689, 629 N.W.2d 223.

¶80 Excusing jurors for bias is proper if the juror is unreasonable and unwilling to set aside preconceived opinions or prior knowledge.  Oswald, 232 Wis. 2d 62, ¶19.  Williams has failed to demonstrate that any juror was biased.  It is not unreasonable for jurors to experience consternation over the prospect of having to view the often disturbing evidence presented in criminal cases.  To the contrary, it is a perfectly reasonable and normal human response.  In addition to Juror No. 12, four other prospective jurors asserted that they would have difficulty viewing crime scene photos.[16]  Both the prosecutor and Williams' attorney questioned the jurors on the issue.

_____

[16] Juror 6, Juror 8, Juror 9, and Juror 21.

33

¶81  Williams' focus on Juror No. 12's statements is based on his use of the term "bias" while attempting to articulate the juror's feelings about having to view photographs of the victims.   Juror No. 12, however, did not use the term to describe the type of subjective bias that would preclude him from serving on the jury.   Rather, Juror No. 12, like the others, was attempting to articulate his preference not to view victim photographs, and explained that viewing the photographs might make him feel sympathy for the victims.   Moreover, after being advised that photographic evidence of the victims would be presented, the jurors were specifically asked whether any of them would be unable to render an impartial decision, and Juror No. 12 did not come forward.

¶82  The unfortunate reality of our justice system is that jurors are often called upon to examine evidence of heinous acts committed against other human beings.   While most jurors would prefer never to see such evidence, that preference does not render them biased or incapable of impartiality as a matter of law.

¶83  In sum, we do not believe that Juror No. 12's comments reflect a "bias" against the defendant as that concept is understood in the law, but merely reservations about having to view disturbing photographs.   Without a showing that Juror No. 12 was biased, Williams cannot prove that he was prejudiced by his trial counsel's decision not to strike Juror No. 12.

ii. Crime Scene Photographs

¶84 "Whether photographs are to be admitted is a matter within the trial court's discretion." State v. Pfaff, 2004 WI App 31, ¶34, 269 Wis. 2d 786, 676 N.W.2d 562.  An appellate court "will not disturb the court's discretionary decision unless it is wholly unreasonable or the only purpose of the photographs is to inflame and prejudice the jury." Id.  In State v. Sage, 87 Wis. 2d 783, 788, 275 N.W.2d 705 (1979), we held that:

> Photographs should be admitted if they will help the jury gain a better understanding of material facts; they should be excluded if they are not "substantially necessary" to show material facts and will tend to create sympathy or indignation or direct the jury's attention to improper considerations.

¶85 Here, Williams argues that his trial counsel was ineffective for not objecting to the admission of photographs depicting the crime scene and the victims' fatal wounds.  Having reviewed each of the photographs used as exhibits at Williams' trial, we conclude that they were neither overly gruesome nor unfairly prejudicial.  The purpose of the photographs was to prove an element of the crimes charged (the deaths of the victims), not to inflame the jury.  Put another way, the probative value of the photographs was not "substantially outweighed by the danger of unfair prejudice." See Wis. Stat. § 904.03.  In addition, the photographs likely were useful in helping the jury garner a more thorough understanding of the events on the night of the killings.

¶86 Because the State used the photographs for a legitimate purpose, the photographs could have been properly

35

admitted into evidence regardless of whether or not Williams' attorney had raised an objection. See Sage, 87 Wis. 2d at 788. Thus, Williams was not prejudiced by the lack of objection, and without prejudice, Williams cannot prevail on his claim of ineffective assistance of counsel.

¶87  Williams briefly raises the argument that the evidence was cumulative because Williams was willing to stipulate to the manner of death. However, in State v. Lindvig, 205 Wis. 2d 100, 108, 555 N.W.2d 197 (Ct. App. 1996), the court of appeals rejected the argument that a defendant's willingness to stipulate to an element could render photographs inadmissible. Instead, the court ruled that even if the defendant is willing to stipulate to an element, "[e]vidence is always admissible to prove an element of the charged crime even if the defendant does not dispute it at trial." Id.

## IV. CONCLUSION

¶88  We hold that a jury instruction may be considered erroneous when it describes a theory of criminal culpability that was not presented to the jury or omits a valid theory of criminal culpability that was presented to the jury. Convictions under erroneous jury instructions are subject to harmless error review. When an erroneous instruction has been given but it is clear beyond a reasonable doubt that the jury would have convicted the defendant had the proper instruction been given, the jury verdict can be affirmed.

¶89  Here, based on the strength of the evidence presented and the statutory elements that the jury found, it is clear

36

beyond a reasonable doubt that the jury still would have convicted Williams of felony murder had the jury instruction accurately reflected the State's theory of the crime. We therefore hold that the defect in the jury instructions was harmless error. Furthermore, we conclude that Williams was not prejudiced by his trial counsel's decision not to strike a juror and not to object to the admission of crime scene photographs. Accordingly, we affirm the circuit court's judgment of conviction.

*By the Court.*—The judgment and order of the circuit court are affirmed.

¶90 SHIRLEY S. ABRAHAMSON, J. *(concurring).* Although I agree that the judgment and order should be affirmed, I do not join the majority opinion.

¶91 The court took the instant case to clarify precedent related to erroneous jury instructions in criminal trials. I am not sure it successfully accomplishes this goal.

¶92 The majority opinion is unclear regarding the relationship between harmless error review and review of the sufficiency of evidence. This confusion seems to stem from the confusion in State v. Beamon, 2013 WI 47, ¶¶19, 20, 46, 50, 51, 347 Wis. 2d 559, 830 N.W.2d 706, on which the majority opinion relies. As I see it, harmless error analysis renders a sufficiency of the evidence analysis redundant. The majority opinion's statement of its approach in ¶53 ("First, was the jury instruction erroneous? Second, is it clear beyond a reasonable doubt that the jury still would have convicted the defendant had the correct instruction been provided?") seems to incorporate only a harmless error analysis, not a sufficiency of the evidence analysis. But Beamon sets forth and applies the two analyses separately. The majority opinion cites and quotes Beamon, masking the majority opinion's rejection of Beamon's two-step analysis.

¶93 For the reasons set forth, I write separately.

1