COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP2344-CR**

Cir. Ct. No. 2018CF2602

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASMINE J. LANIER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Dugan, Graham and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jasmine J. Lanier appeals her judgment of conviction for felony intimidation of a witness by force or violence, substantial battery, and battery or threat to a witness, all as a party to a crime, and the trial court's order denying her postconviction motion without a hearing. On appeal, Lanier argues that the evidence was insufficient to convict her of felony intimidation of a witness and battery or threat to a witness. She also argues that the prosecutor failed to disclose an informant agreement that the Milwaukee Police Department (MPD) had with the victim, that the trial court erred in granting the State's motion to join her trial with the trials of her father and her cousin and erred by denying her motion for severance, and that her trial counsel was ineffective.

¶2 We conclude that there is sufficient evidence to support Lanier's convictions for felony intimidation of a witness and battery or threat to a witness. Additionally, we conclude that, even assuming without deciding that the jury instructions for felony intimidation of a witness were erroneous, any error was harmless, and that the jury instruction for battery or threat to a witness did not result in a conviction for an uncharged offense or improperly modify the amended information. We further conclude that Lanier is not entitled to disclosure of any informant agreement and that she conceded her arguments that the trial court erred in granting the State's motion for joinder and denying Lanier's motion for severance, and her argument that trial counsel provided ineffective assistance of counsel because she failed to refute the State's arguments regarding these issues in her reply brief. Accordingly, we affirm.

## BACKGROUND

¶3    Jared Lanier-Cotton, Lanier's cousin, was arrested on May 24, 2018, and charged with drug-related offenses. N.W., a confidential informant with the MPD, introduced an undercover officer to Jared, and Jared sold heroin and cocaine to the officer.[1] On May 29, 2018, five days after Jared's arrest and on the same day as his release from custody, N.W. was beaten by a group of people who approached her outside of her home when she was getting out of her car.

¶4    Lanier, Jared, and Lanier's father, Jan Lanier, were all charged in a subsequent criminal complaint dated June 7, 2018, for N.W.'s beating.[2] In total, the criminal complaint included eleven counts against Lanier and her co-defendants. Lanier was specifically charged in Count 10 with felony intimidation of a witness, as a party to a crime, contrary to WIS. STAT. §§ 940.43(1) and 939.05 (2019-20),[3] and charged in Count 11 with aggravated battery, as a party to a crime, contrary to WIS. STAT. §§ 940.19(5) and 939.05.[4]

---

[1] As alleged and as based on the testimony at trial, Jared sold heroin and cocaine to the undercover officer on multiple occasions. N.W. was only present for the initial introduction and was not present at each transaction or at the time of Jared's arrest. In fact, Jared's arrest took place at the same time the police executed a search warrant at Jared's address in which the police recovered drugs and weapons. There were several others, identified as Jared's family members, present at the time of the search who were also arrested. One of the officers who executed the search warrant also testified that Lanier was one of the family members who gathered "in the crowd" at the time the search warrant was executed.

[2] The criminal complaint also charged Khristopher Lanier in connection with the beating of N.W. Khristopher is not a part of this appeal, nor was he a part of the proceedings below.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[4] The charge of aggravated battery was amended in a subsequent information to a charge of substantial battery, as a party to a crime, contrary to WIS. STAT. §§ 940.19(2) and 939.05.

¶5 In an amended information dated November 8, 2018, Lanier was additionally charged with battery or threat to a witness, as a party to a crime and with use of a dangerous weapon, contrary to WIS. STAT. §§ 940.201(2)(a), 939.05, and 939.63(1)(b). This charge was designated as Count 13, and it stated that Lanier "did intentionally cause bodily harm to [N.W.], a person whom she had reason to know was likely to be called as a witness." In an amended information filed the following day, Count 13 was changed to state that Lanier did intentionally cause bodily harm to N.W., who was "a person whom she had reason to know was a witness by reason of the person having attended as a witness." This same language was repeated in the final amended information dated December 3, 2018, and there were no further amendments to the information.

¶6 The State moved to try all the charges against Lanier, Jared, and Jan, including the charges in Jared's underlying drug case, jointly because the evidence in Jared's drug case was intertwined with the evidence for the charges brought for N.W.'s beating and the defendants were alleged to have participated in the beating together. The trial court granted the motion. However, Jared subsequently pled guilty to the charges in his underlying drug case, and the defendants were ultimately tried together in a jury trial in December 2018 only for the charges resulting from the beating of N.W.

¶7 At trial, the State called N.W. and multiple police officers to testify about the events of May 29, 2018, and the events leading up to it. As the testimony at the trial reflected, N.W. was a confidential informant for the MPD who was provided compensation to introduce undercover officers to individuals who sold illegal drugs. As N.W. described it, she would do "buys and intros."

¶8    As noted, based on this arrangement with the MPD, N.W. introduced an undercover officer to Jared, and Jared subsequently sold heroin and cocaine to the officer. Jared was arrested and charged as a result of his selling illegal drugs to the officer. On the day of his release from custody on May 29, 2018, N.W. was approached by Jared, Lanier, and several other individuals outside of her home and beaten for introducing an undercover officer to Jared. At the time Jared was released from custody on May 29, there had been no proceedings in his case, such as naming of witnesses by the State or any evidentiary hearings where testimony was given.

¶9    In particular, N.W. testified at trial that, during the beating, Jared accused her of "setting him up" and being "the one who told on him got him in trouble for the dealing and stuff." She further testified that after Jared had her on the ground, a woman started hitting her, and she heard Jared call the name "Jasmine." She further testified that the woman who hit her said, "[W]hat did you do to my brother?"[5]  Following the beating, N.W. identified Lanier as the woman who was hitting her.

¶10    The State also introduced phone calls made by Jared to several individuals during the five days he spent in custody in which Jared identified N.W. as responsible for his arrest and expressed his anger over N.W.'s role in his arrest. As one of the officers testified, some of these phone calls were to a phone number later identified as belonging to Lanier's cell phone and the voice on the other end of the call was identified as a woman's voice that sounded similar to Lanier.

---

[5] N.W. testified that she knows Lanier as Jared's sister, but Lanier and Jared are in fact cousins.

During one of these phone calls, Jared is heard telling the person on the other end of the call "to tell Markey that [N.W.] did it; [N.W.] did it."[6]

¶11    On December 6, 2018, the jury found Lanier and Jared guilty on all counts, but it found Jan not guilty. Lanier was subsequently sentenced to concurrent sentences of thirty months of initial confinement and sixty months of extended supervision on Count 10, twelve months of initial confinement and twelve months of extended supervision on Count 11, and twelve months of initial confinement and twelve months of extended supervision on Count 13.

¶12    Lanier filed a motion for postconviction relief and a motion for postconviction discovery. In her motion for relief, Lanier first argued that the State failed to prove its case for felony intimidation of a witness (Count 10) and battery or threat to a witness (Count 13) because the State failed to prove that N.W. was a witness. Lanier additionally argued that the State failed to disclose N.W.'s informant agreement, that her trial was improperly joined with the trials of her father and her cousin, and that her trial counsel was ineffective in multiple ways. In her motion for discovery, Lanier requested N.W.'s agreement, and any related documents, with the MPD describing the nature of N.W.'s role as an informant. The trial court denied Lanier's motions, and this appeal follows.

## DISCUSSION

¶13    On appeal, Lanier renews her same arguments raised below in her postconviction motion related to the sufficiency of the evidence for Counts 10

_____

[6] We use N.W. in this quote, but note that the officer said that Jared used N.W.'s nickname, rather than her name. We insert her initials in compliance with WIS. STAT. § 809.86.

and 13, disclosure of documents related to N.W.'s role as a confidential informant for the MPD, the joinder of her trials with the trials of her cousin (Jared) and father (Jan), and ineffective assistance of counsel. We address each argument in turn.

### I.     Sufficiency of the Evidence for Counts 10 and 13

¶14     A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. **State v. Poellinger** establishes the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citations omitted).

> A.     *Lanier's Conviction for Count 10:     Felony Intimidation of a Witness*

¶15     Lanier was charged in Count 10 with felony intimidation of a witness, contrary to WIS. STAT. § 940.43(1). Intimidation of a witness is defined as "whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade any witness from attending or giving testimony at any trial, proceeding or inquiry authorized by law." WIS. STAT. § 940.42. As is relevant

here, when accompanied by force or violence, or attempted force or violence, the act of intimidation is considered a felony. Sec. 940.43(1).

¶16    For purposes of WIS. STAT. § 940.43(1), witness is defined in WIS. STAT. § 940.41(3) as:

> [A]ny natural person who has been or is expected to be summoned to testify; who by reason of having relevant information is subject to call or likely to be called as a witness, whether or not any action or proceeding has as yet been commenced; whose declaration under oath is received as evidence for any purpose; who has provided information concerning any crime to any peace officer or prosecutor; who has provided information concerning a crime to any employee or agent of a law enforcement agency using a crime reporting telephone hotline or other telephone number provided by the law enforcement agency; or who has been served with a subpoena issued under s. 885.01 or under the authority of any court of this state or of the United States.

¶17    During the closing instructions, the trial court instructed the jury that, in order to find Lanier guilty of intimidation of a witness, it would have to find that N.W. was a witness. Despite the broader definition of a witness provided in the statute, the trial court instructed the jury that "[w]itness means any person who has been called to testify or who is expected to be called to testify."[7] The trial court further instructed that the jury would have to find that "the defendant or

---

[7] The definition of a witness as provided by the trial court in the closing instructions is the standard definition provided in WIS JI—CRIMINAL 1292. As reflected in the comments to this jury instruction, this definition of a witness is "a simplified version of the definition provided in [WIS. STAT.] § 940.41(3)" and was intended to "be suitable for most cases." We note that WIS JI—CRIMINAL 1238, which relies on the same statutory definition of a witness, inserts two options in the jury instruction for defining witness. The first option is the same simplified version of the definition of a witness provided in WIS JI—CRIMINAL 1292. The second option is to insert the "proper term from the definition in § 940.41(3)." We note that this second option provided in WIS JI—CRIMINAL 1238 would be an appropriate option to include in WIS JI—CRIMINAL 1292 when confronted with a situation in which the simplified version is not suitable.

another person attempted to dissuade [N.W.] from attending or giving testimony at a proceeding authorized by law" and "the defendant or another person acted knowingly and maliciously."

¶18    Relying on the definition of a witness provided in the jury instructions, Lanier argues that there was insufficient evidence that N.W. was a witness and there was insufficient evidence that Lanier knew that N.W. was a witness on May 29, 2018.  Therefore, she argues that her conviction must be reversed.  We disagree.

¶19    N.W. testified that she had knowledge of Jared's illegal drug dealing activities, provided that information to the MPD, and then introduced an undercover officer to Jared.  N.W.'s information then led to Jared's arrest and criminal charges prior to the date of the beating.  Given N.W.'s role in providing information to the MPD that led to Jared's arrest, the jury could reasonably infer that N.W. was "expected" to testify in any criminal proceedings that resulted from the information she provided.  Indeed, even though N.W. was a confidential informant, Officer Christopher Navarette with the MPD explained that confidential informants can be "pertinent" in the subsequent criminal proceedings and, therefore, he further testified, "She is a witness.  She's one of the witnesses."

¶20    There was also sufficient evidence from which the jury could reasonably infer that Lanier knew that N.W. was a witness.  The State introduced evidence at trial that Jared called Lanier while he was in custody just prior to the beating, that Jared identified N.W. as responsible for his arrest and criminal charges, and Lanier was aware of this connection at the time of the beating because she asked N.W. what N.W. did to her brother.

¶21    Lanier's reliance on the lack of a formal prosecutorial decision to call N.W. as a witness, primarily in the form of the terms of N.W.'s informant agreement and the State's witness list filed in October, is misplaced. The definition of a witness "recognizes *putative* witnesses as well as *actual* witnesses." *State v. Mendez*, 157 Wis. 2d 289, 296, 459 N.W.2d 578 (Ct. App. 1990). At the time N.W. provided information to the MPD, there was an expectation that N.W. could be summoned to testify, regardless of any terms that may or may not have been contained in her informant agreement and despite any lack of a formal witness list being filed in Jared's case. Thus, the evidence introduced at trial allowed the jury to make a reasonable inference that there was an expectation that N.W. could be summoned to testify. *See id.*

¶22    Even assuming that the definition of a witness in the jury instruction was erroneously restricted considering the facts of this case, harmless error applies. Lanier cites *State v. Wulff*, 207 Wis. 2d 143, 557 N.W.2d 813 (1997), for the proposition that we measure her sufficiency of the evidence argument against the jury instruction. However, Lanier's argument fails to recognize that *Wulff* predated the adoption of the harmless error analysis. *See State v. Williams*, 2015 WI 75, ¶63 n.11, 364 Wis. 2d 126, 867 N.W.2d 736. Thus, if *Wulff* were to be decided today, it would be analyzed using a harmless error framework. *Id.* Thus, we ask whether "it is clear beyond a reasonable doubt that the jury would have convicted the defendant had the proper instruction been given." *Id.*, ¶6.

¶23    Based on the evidence provided, it is clear beyond a reasonable doubt that the jury would have convicted Lanier had it been provided with the full definition of a witness provided by WIS. STAT. § 940.41(3). N.W. testified that she provided information to the MPD that Jared was selling illegal drugs and introduced an undercover officer to Jared. Consequently, N.W. clearly falls within

the additional categories of a witness that the jury could have been instructed on. Specifically, N.W. had relevant information about Jared's drug dealing that made her subject to call as a witness. She also provided information concerning Jared's criminal activities to the MPD, as peace officers. Thus, any error in the definition of a witness provided in the jury instructions is harmless. *See **Williams***, 364 Wis. 2d 126, ¶¶60-63.

### B. Lanier's Conviction for Count 13: Battery or Threat to a Witness

¶24 Lanier was charged in Count 13 with battery or threat to a witness contrary to WIS. STAT. § 940.201(2)(a), which defines the offense as whoever

> [i]ntentionally causes bodily harm or threatens to cause bodily harm to a person who he or she knows or has reason to know is or was a witness by reason of the person having attended or testified as a witness and without the consent of the person harmed or threatened.

Pursuant to § 940.201(1)(b), witness is then given the same meaning as that provided in WIS. STAT. § 940.41(3), which is defined above.

¶25 As with the intimidation of a witness charge, the trial court instructed the jury on this charge that it was required to find, as one of the necessary elements of the crime, that N.W. "was a witness." The trial court then instructed the jury by listing the more specific categories of a witness from WIS. STAT. § 940.41(3) saying,

> Witness means any person who has been or is expected to be summoned to testify[;] who by reason of having relevant information is subject to call or likely to be called as a witness[;] or who has provided information concerning any crime to any peace officer, prosecutor, whether or not any action or proceeding has yet been commenced.

11

The trial court further instructed the jury on the fourth element of the offense that it must find that "the defendant or another person caused bodily harm to [N.W.] because the person was a witness."[8]

¶26    Lanier again argues that there is insufficient evidence for N.W. to be considered a witness.  As to this charge for battery to a witness, Lanier argues that there is insufficient evidence because the definition of a witness provided in the amended information was one who had "attended as a witness."  She further argues that the trial court's instruction to the jury on the broader definition of a witness included in WIS. STAT. § 940.41(3) silently amended the information and her subsequent conviction on this charge resulted in her being convicted for an uncharged offense.

¶27    In response, the State argues that Lanier's conviction should be upheld despite any alleged mismatch between the definition of a witness in the amended information and the definition as provided to the jury by the trial court during the closing instructions.  The State argues that the definition as provided in

---

[8] The jury instruction applicable here, WIS JI—CRIMINAL 1238, defines a witness as "any person who has attended a proceeding to testify or who has testified."  The comments instruct:

> In [**McLeod v. State**], 85 Wis. 2d 787, 271 N.W.2d 157 (Ct. App. 1978), the Wisconsin Court of Appeals held that the predecessor to § 943.201—§ 940.26, 1975 Wis. Stats.—also applied where the victim has not yet attended or testified but is expected to be summoned to testify.  For that type of case, the definition of "witness" in the second element should be modified to refer to "a person who is expected to be summoned to testify."

The comments further note that the element listed in the instruction as the fourth element "is drafted for a case where the person has attended or testified.  If that statement does not fit the status of the victim, the statement must be modified" in accordance with **McLeod**.

the jury instructions did not change the criminal offense with which Lanier was charged or alter the elements of the offense that the State was required to prove.

¶28    For many of the same reasons noted above, we conclude that the State introduced sufficient evidence from which the jury could reasonably infer that N.W. was a witness.  However, having so concluded, we further address Lanier's argument that her conviction on this charge resulted in her being convicted for an uncharged offense and her additional argument that the information was silently amended by the jury instruction.[9]

¶29    In this case, the information consistently charged Lanier with battery or threat to a witness contrary to WIS. STAT. § 940.201(2)(a), the jury was instructed on the elements necessary for a conviction under this statute, and Lanier's conviction is under the same statutory offense.  There was, therefore, no conviction for an uncharged offense or a silent amendment of the information by the jury instruction.  *See State v. Duda*, 60 Wis. 2d 431, 439-42, 210 N.W.2d 763 (1973) (addressing an amendment to the charge of bribery of a witness to solicitation of perjury).

¶30    Nevertheless, we recognize that the amended and final information, using the language provided in the statutory offense, stated that N.W. "was a witness by reason of the person having attended as a witness."  A cursory reading of the information and the charged offense would seem to indicate that a witness is accordingly limited to a person who has attended a proceeding as a witness.

---

[9] We do not address the additional argument raised by Lanier that the verdict forms omitted necessary language because Lanier fails to provide legal authority.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

However, when taken in its proper context, a witness within the meaning of this offense is not limited in such a manner.

¶31    Rather, when read in context, witness in the charged offense is defined in WIS. STAT. § 940.201(1)(b), which in turn defines witness using WIS. STAT. § 940.41(3).  This definition is precisely what the jury was instructed on, and we discern no error in the instruction for using this definition.  To limit the definition to a "person having attended as a witness" would be to ignore the definition of a witness provided by the legislature in § 940.201(1)(b) and render this provision superfluous.  *See State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 226, 496 N.W.2d 177 (Ct. App. 1992).  Indeed, we addressed the same interplay in *McLeod v. State*, 85 Wis. 2d 787, 271 N.W.2d 157 (Ct. App. 1978), where we defined "witness" in the predecessor to § 940.201 using the predecessor to § 940.41(3).[10]

¶32    The jury instruction, therefore, appropriately defined a witness consistent with the charged offense, and we reject Lanier's arguments that her conviction on Count 13 amounts to a conviction for an uncharged offense or a silent amendment to the information.

## II.    Disclosure of N.W.'s Informant Agreement

¶33    Lanier argues that the State was required to disclose the agreement, and any documentation of the relationship, between the MPD and N.W. pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), because any agreement or other

---

[10] In response to the State's argument raising *McLeod*, Lanier argues that *McLeod* was wrongly decided.  We "may not overrule, modify or withdraw language from a previously published decision." *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

documentation about the relationship between N.W. and the MPD is evidence favorable to Lanier by way of its impeachment value. We disagree.

¶34    "In *Brady*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor.'" *State v. Harris*, 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737 (quoting *Brady*, 373 U.S. at 87). We review independently whether a *Brady* violation has occurred. *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468.

¶35    "In order to establish a *Brady* violation, the defendant must, in addition to demonstrating that the withheld evidence is favorable to him, prove that the withheld evidence is 'material.'" *Harris*, 272 Wis. 2d 80, ¶13 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)). "Evidence is favorable to an accused, when, 'if disclosed and used effectively, it may make the difference between conviction and acquittal.'" *Id.*, ¶12 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶14 (quoting *Bagley*, 473 U.S. at 682).

¶36    In this case, N.W. was testifying in her capacity as a victim of a crime and not in her capacity as an informant for the MPD, and we fail to see how any agreement between N.W. and the MPD for "buys and intros" would have been favorable or material to the criminal proceedings here. Lanier does not provide any reason to believe that N.W. was provided any incentive under her agreement

with the MPD to accuse, identify, or testify against Lanier in this case. Even assuming that N.W.'s agreement included compensation for her testimony at subsequent criminal proceedings related to drug charges, the agreement would not undermine the confidence of the outcome because there is no reason to believe that N.W. was provided any incentive to testify against Lanier in these proceedings. Thus, we conclude that Lanier has failed to establish a ***Brady*** violation requiring the State to turn over any agreement or documentation about the relationship between N.W. and the MPD.

### III. Joinder of Lanier's Trial and Denial of Lanier's Motion for Severance

¶37 Lanier argues that the trial court erred in granting the State's motion to join Lanier's trial with the trials of her cousin and her father and erred in denying her motion for severance because the "spillover effect" from her being associated with them as felons was unduly prejudicial.

¶38 In its responsive brief, the State addressed both the joinder and severance arguments that Lanier made in her opening brief. The State cited statutory and case law authority in support of its arguments that the trial court did not err in granting the State's motion for joinder and denying Lanier's motion for severance.

¶39 In her reply brief, Lanier did not even mention, let alone address, the State's arguments regarding joinder and severance. Therefore, we conclude that Lanier failed to refute the argument raised by the State and has conceded her argument. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession). We, therefore, decline

to address the merits of Lanier's arguments pertaining to joinder and severance. Also, to the extent that Lanier argues that her trial was improperly joined because of references to additional acts of intimidation and drug dealing, we reject these arguments as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

### IV.  Ineffective Assistance of Counsel

¶40    Lanier argues that her trial counsel was ineffective for failing to move for dismissal of the battery to a witness charge based on the prejudicial amendment to the charge in Count 13; failing to demand production of N.W.'s informant agreement or any documentation connected to it; failing to request midtrial curative instructions to ameliorate the prejudicial effects of the joinder of her trial with that of her father and her cousin; and failing to object to opinion testimony from police officers that testified at the trial.

¶41    In its response brief, the State addressed each of the ineffective of assistance arguments that Lanier made in her opening brief. The State cited applicable case law authority in support of its arguments that the trial court did not err in each of Lanier's arguments that trial counsel provided ineffective assistance of counsel.

¶42    In her reply brief, Lanier did not even mention, let alone address, the State's arguments regarding ineffective assistance of counsel. Therefore, Lanier has conceded her arguments that her trial counsel was ineffective because she failed to include an argument in her reply brief to refute the arguments raised by the State in its response brief. *See United Coop.*, 304 Wis. 2d 750, ¶39 (stating that the failure to refute a proposition asserted in a response brief may be taken as

a concession). We, therefore, decline to address the merits of Lanier's arguments for ineffective assistance of counsel.

¶43 However, we note that many of Lanier's arguments lack merit as a result of our conclusions above, and trial counsel's performance cannot be considered deficient, for failing to bring a meritless motion. *See* ***State v. Berggren***, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (concluding that trial counsel was not ineffective for failing to make a motion that would have been appropriately denied). Furthermore, Lanier makes an argument for prejudice based on the cumulative effect of trial counsel's errors. Again as a result of our above conclusions, Lanier is unable to show prejudice from non-existent cumulative errors. *See* ***State v. Thiel***, 2003 WI 111, ¶¶58-63, 264 Wis. 2d 571, 665 N.W.2d 305. Thus, we do not address Lanier's arguments for ineffective assistance of counsel further.

**CONCLUSION**

¶44 In sum, we conclude that there was sufficient evidence introduced at trial to support Lanier's convictions for intimidation of a witness and battery or threat to a witness. Further, we conclude, assuming without deciding, that if the jury instructions for felony intimidation of a witness were erroneous, any error was harmless, and that the jury instruction for battery or threat to a witness did not result in a conviction for an uncharged offense or improperly modify the amended information. Additionally, Lanier has not established a ***Brady*** violation as it relates to N.W.'s informant agreement. Lastly, we conclude that Lanier conceded her arguments that the trial court erred in granting the State's motion for joinder and denying Lanier's motion for severance, and that trial counsel provided ineffective assistance of counsel, and regardless, Lanier's ineffective assistance of

18

counsel arguments lack merit given our above conclusions. Consequently, we affirm the judgment and the trial court's denial of Lanier's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.